MEGAN K. McHENRY, ESQ.
Nevada State Bar No. 9119
LAW OFFICE OF HAYES & WELSH
199 North Arroyo Grande Blvd., Suite 200
Henderson, Nevada 89074
Phone: 702-434-3444
Fax #:  702-434-3739
m.mchenry@lvlaw.com; k.bratton@hayesandwelsh.onmicrosoft.com

Michael Machat, Esq.
Machat & Associates, PC
California State Bar Number 109475
*Pro hac vice pending*
8730 W. Sunset Blvd., Ste. 250
W. Hollywood, California 90069
Telephone: (310) 860-1833
Email: michael@machatlaw.com


*Attorneys for Plaintiff/Creditor,*
*Sonia Feldman*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In Re:<br><br>MARK ANTHONY SAWYER and JENNIFER ANN SAWYER,<br><br>Debtors. | CASE NO.: 26-12677-abl<br> Chapter 7 |
| SONIA FELDMAN,<br><br>Plaintiff,<br><br>v.<br><br>MARK ANTHONY SAWYER and JENNIFER ANN SAWYER,<br><br>Defendants. | Adv. Proc. No.: |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT**

Plaintiff Sonia Feldman ("Plaintiff" or "Ms. Feldman" or "Creditor") alleges:

/ / /

/ / /

LAW OFFICE OF
HAYES & WELSH
A PROFESSIONAL CORPORATION
199 NORTH ARROYO GRANDE BLVB., SUITE 200
HENDERSON, NEVADA 89074
(702) 434-3444  FAX (702) 434-3739

**PREFATORY ALLEGATIONS**

1. This is an action to determine the dischargeability of a debt under 11 U.S.C Section 523(a)(2), 523(a)(4), and 523(a)(6), and is brought as an adversary proceeding in accordance with Bankruptcy Rules 4007 and §§700l et seq.

2. The Debtors and Defendants, Mark Anthony Sawyer ("Mr. Sawyer") and Jennifer Ann Sawyer ("Mrs. Sawyer" and collectively "Defendants"), filed a petition under Chapter 7 of the Bankruptcy Code in this Court on April 29, 2026 in a case denominated *In Re Mark Anthony Sawyer and Jennifer Ann Sawyer*, Case Number 26-12677, and, since that day, have been debtors and subject to the jurisdiction of this Court.

3. This is an action under 11 U.S.C. §523(c) for a determination excepting Plaintiff's debt from discharge. This court has jurisdiction of this action under 11 U.S.C. §1334, and this complaint is a core proceeding pursuant to 28 U.S.C. section 157(b)(2)(I). Venue of this lawsuit is proper pursuant to 28 U.S.C. § 1409.

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  If the Court finds this is not a core matter, then Plaintiff consents to entry of judgment by the United States Bankruptcy Judge.

5. Plaintiff is a creditor by reason of two judgments. The most recent judgment was against the Defendants and various related entities of theirs in the US District Court for the District of Nevada, Case No. 2:24-cv-00526 where Judge Mahon granted judgment against all defendants in that case, including the Defendants in this case, finding along the way that Plaintiff Sonia Feldman was a victim to Defendants' Ponzi scheme.

> *Mark and Jennifer Sawyer ran this purported bridge loan program together, which Ms. Feldman alleges—and the Sawyers admitted—was a Ponzi scheme. It is undisputed that Mrs. Sawyer assisted her husband in this scheme so that she could benefit from Ms. Feldman's financial investment with her husband.*

*Id*. [Case No. 2:24-cv-00526, ECF 56 at page 2].

6. Judge Mahon ordered judgment in the amount of $1,176,337.13, plus statutory interest, costs, and attorneys' fees on March 25, 2026.  A motion for attorney's fees is pending. [Case No. 2:24-cv-00526, ECF 56].

LAW OFFICE OF
HAYES & WELSH
A PROFESSIONAL CORPORATION
199 NORTH ARROYO GRANDE BLVB., SUITE 200
HENDERSON, NEVADA 89074
(702) 434-3444  FAX (702) 434-3739

7.    This District Court Judgment follows a judgment for $3,149,689.67 plus interest, costs and attorney's fees entered in the Los Angeles Superior Court, Case No. 23STCV26012 against Defendant Mark Anthony Sawyer ("CA Judgment").  This judgment was entered August 19, 2024.  With interest, costs and an award of attorney's fees, the actual amount Defendants owe Plaintiff is at least $3.6 million dollars. An exact amount will be filed with the Court at the appropriate time.

8.    The CA Judgment was domesticated to Nevada on August 23, 2024 in *Sonia Feldman v. Mark Anthony Sawyer dba MAS Financing*, Case No. A-24-900430-F in the Eighth Judicial District Court for Clark County, Nevada.

9.    Defendants had been running (and perhaps still are) a Ponzi scheme, making them ineligible for bankruptcy relief.

**FACTUAL SUMMARY**

10.    Plaintiff Sonia Feldman was conned by Defendant Mark Anthony Sawyer, with the backing of his wife, Defendant Jennifer Ann Sawyer, to invest $1,176,337.13 into the Sawyers' supposed bridge loan program. Plaintiff made two investments with Defendants. The first investment was for $10,000 and made at the end of January 2021.  (A copy of the first contract for the initial investment of $10,000 is attached as **Exhibit 1**.)

11.    The second investment was for $1,166,337.13 and made May 23, 2021. Each investment offered high rates of interest – approximately 15% over a 90-day period.  (A copy of the second contract pursuant to which Ms. Feldman entrusted Mr. Sawyer with $1,166,337.13 is attached as **Exhibit 2**.)

12.    Mark Sawyer was a master at convincing people to hand him money so he could invest it in bridge loans at such high rates of returns for just 90 days. He convinced so many people to repeatedly roll their investments over for additional 3-month period.  After doing this with Ms. Feldman for a couple of years, Ms. Feldman requested to withdraw $200,000 and the scheme unraveled.

13.    Mr. Sawyer claimed he didn't have the liquidity because he had unwittingly done business with a couple of money launderers and his funds were temporarily frozen. Upon hearing

LAW OFFICE OF
HAYES & WELSH
A PROFESSIONAL CORPORATION
199 NORTH ARROYO GRANDE BLVB., SUITE 200
HENDERSON, NEVADA 89074
(702) 434-3444  FAX (702) 434-3739

LAW OFFICE OF
HAYES & WELSH
A PROFESSIONAL CORPORATION
199 NORTH ARROYO GRANDE BLVB., SUITE 200
HENDERSON, NEVADA 89074
(702) 434-3444  FAX (702) 434-3739

this, Ms. Feldman requested the return of all her money. When that did not happen, Ms. Feldman retained counsel and first filed suit in the Los Angeles Superior Court (where she obtained a judgment) and then in the Nevada District Court.

14.    The purported bridge loan program turned out to be nothing but a Ponzi scheme, and Mr. Sawyer's wife (Defendant Jennifer Sawyer) played a key role by falsely touting her husband as a financial genius while knowing all the time that he was a fraud.

15.    Not long after Ms. Feldman filed her lawsuit against Mr. Sawyer in California, the lawsuit was picked up by Trellis Law and downloads of the complaint were offered for free. Many other victims who had googled Mark Sawyer were able to read how Plaintiff was scammed, and they reached out to Plaintiff's attorney.   Counting all those that have contacted counsel for Plaintiff, Plaintiff estimates there are at least another 100 victims of Defendants' Ponzi scheme.

16.    It has been said that Bernie Maddof never actually made any trades but that he just used other people's monies to pay off prior investors. Plaintiff alleges Defendants, like Bernie Madoff, never made any legitimate investments.  Instead, Defendants used all the monies invested by Ms. Feldman to live a lavish lifestyle.  After pursuing Mark Sawyer for at least two and a half years, and demanding discovery along the way, as well as obtaining information from perhaps 50 other victims, no documentary evidence has surfaced to show that Defendants made any legitimate investments at all.

**FIRST CLAIM FOR RELIEF**

**(Denial of Discharge of Debt - 11 U.S.C. § 523(a)(2))**

17.    Plaintiff repeats, realleges and incorporates herein by reference each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

18.    Defendant Mark Anthony Sawyer held himself out as a financial genius who, using so called "bridge loans," represented that investors could double their money in less than two years. He claimed to have made a fortune with his bridge loan program by persuading people to let him use their money to loan at high rates of interest to people and/or companies willing to

pay high rates of interest for 90 days until they would be able to obtain money at lower rates of interest.

19.     In exchange for using his investors' monies, Mr. Sawyer promised to pay his investors a return ranging from 12% to 19% for just a 90-day period. At rates this high, one could double their money within a two-year period.

20.     Mr. Sawyer encouraged all those who invested into his bridge loans to keep renewing their investments every ninety days. For years, if any of his investors asked to withdraw any part of their money instead of letting it renew, Mr. Sawyer simply used other, newer investors' money to pay back the old investors.

21.     At all relevant times, Mrs. Sawyer was aware of her husband's Ponzi scheme and represented that Mr. Sawyer was a financial genius. She did this through blog and video posts, falsely broadcasting online on YouTube and Facebook and elsewhere, that her husband was a financial genius; while always knowing he was a fraud.  Mrs. Sawyer propped up her husband's fraud so she could personally benefit from the money that he stole from others, including the money he stole from Ms. Feldman.

22.     Upon information and belief, Mrs. Sawyer was an active participant in Mr. Sawyer's fraud, participating in group meetings where various members of the fraud team, including the feeders (some of them unwitting), such as Charles Dunlap, Gaelen Whittemore, Elke Stephenson, Renee Dickenson, Henry Dickenson and others would meet up quarterly at the Defendants' home at  6940 N. Jensen Street and discuss the progress of their criminal goals of enticing naïve investors to invest in  Defendants' Ponzi scheme.

23.     Both Mr. and Mrs. Sawyer recruited others (i.e., feeders) to bring other potential investors into the "bridge loan" program. Upon information and belief, as a reward, Defendants gave the "feeders" a commission on the money brought in plus, in the past, they gave them each a Mercedes G-Wagon to drive.

24.     Two of the feeders, Gaelen Whittemore and Domino Whittemore, seduced Ms. Feldman with tales of Mr. Sawyer's financial brilliance and helped con Ms. Feldman into giving

LAW OFFICE OF
HAYES & WELSH
A PROFESSIONAL CORPORATION
199 NORTH ARROYO GRANDE BLVB., SUITE 200
HENDERSON, NEVADA 89074
(702) 434-3444  FAX (702) 434-3739

Mr. Sawyer $1,176,337.13 to invest into his bridge loan program. They are currently defendants in a separate lawsuit pending in Los Angeles.

25.     Gaelen Whittemore ("Gaelen") received behind the scenes coaching from Mr. Sawyer and took advantage of Ms. Feldman's trust in him.  Gaelen was Ms. Feldman's teacher, and she confided in him that she had spent a million dollars of her inheritance from her parents and was hoping to make it back somehow.

26.     The two feeders, Gaelen Whittemore and Domino Whittemore, pumped up Ms. Feldman with a wild story about how Mr. Sawyer could help her to recover the money she lost to others through bad decisions. Then, in early 2021, the Whittemores introduced Ms. Feldman to Mr. Sawyer, who supposedly would help her recover the million dollars she had lost.

27.     But first they played it that Mr. Sawyer was a hard man to get in touch with, and that she was one of the lucky ones who would get to work with him. By playing hard to reach, Mr. Sawyer was able to make the scam believable, however unbelievable it is to a rational person that earning so much money by constantly rolling over high interest bridge loans was a great opportunity.

28.     When Ms. Feldman eventually got to meet Mr. Sawyer via zoom for the first time, she was gushing with naïve enthusiasm. She believed it to be her lucky day. They met over zoom, and Mr. Sawyer assured her in a recorded conversation he could recoup the million dollars that she lost and earn money on top of that, all through the use of a bridge loan program he made up.

29.     Mr. Sawyer promised to treat Ms. Feldman like his daughter and represented that he would help her make the million dollars she lost back, and then some on top.  So struck by his apparent brilliance, she foolishly invested with him.

30.     The first payment was for $10,000 on January 29, 2021, and the second payment was for $1,166,337.13 on May 3, 2021.

31.     Over the next two years, Mr. Sawyer and his feeders told Ms. Feldman that her investment had grown to approximately $3 million dollars. They convinced her to simply roll her money over again every 90 days.

32.     This went on for nearly two years, and then in the early summer of 2023, Ms. Feldman asked for just $200,000 of her money back. She was ready at that time to keep rolling the rest of the money into the bridge loans. However, the $200,000 was not forthcoming. Instead, Gaelen Whittemore who acted as the gatekeeper to his wife, Domino Whittemore, who in turn acted as the gatekeeper to Mr. Sawyer started making up ridiculous stories.  They represented that Defendants' partner bank (Chase) had restricted the amount of money that could be withdrawn at any one time due to the fact that Mr. Sawyer had mistakenly done a deal with a couple of money-launderers. (That's not a mistake or misquote. Mr. Sawyer repeatedly referred to Chase as his partner bank.)

33.     After more time went by and still no money was forthcoming, Ms. Feldman then demanded to pull all her money out of the program. (*See* **Exhibit 3**.)

34.     No money was returned by Defendants to Ms. Feldman. Nor could any payments be made because rather than using the funds for making bridge loans to others at high interest rates, upon information and belief, Defendant used the money for personal matters.

35.     Upon information and belief, the money was misappropriated by Defendants long ago. Defendants began spinning some yarns about Plaintiff's investment funds, that somehow got tied up with stories of money launderers, and they asked her to be patient.

36.     Fortunately, Ms. Feldman woke up from her dreams and realized she most likely had been scammed. As a result, Ms. Feldman brought the aforementioned lawsuit in Los Angeles for breach of contract, and then many other victims of Mr. Sawyer (having learned about it from googling Mr. Sawyer) started reaching out to Plaintiff's counsel, saying they too were conned, just like Ms. Feldman.

37.     Ms. Feldman's counsel issued a subpoena to Chase, Mr. Sawyer's bank, for Mr. Sawyer's bank records, and discovered that within two or three days of receiving Ms. Feldman's check for $1,166,337.13 (*see* **Exhibit 4**), Mr. Sawyer wrote checks for over one million dollars of that sum to the Vegas Auto Gallery.  At a debtor exam, Mr. Sawyer later confessed to buying an expensive McLaren Senna with Ms. Feldman's money.  (Copies of the checks written to the

LAW OFFICE OF
HAYES & WELSH
A PROFESSIONAL CORPORATION
199 NORTH ARROYO GRANDE BLVB., SUITE 200
HENDERSON, NEVADA 89074
(702) 434-3444  FAX (702) 434-3739

Vegas Auto Gallery are attached as **Exhibit 5**.)  (A copy of Mr. Sawyer's bank statement is attached as **Exhibit 6**.)

38.     As described above, Defendants intentionally lied about the use of the funds that they persuaded Ms. Feldman to give them.  There were no bridge loans made with the money.  It was all a scam, and the Defendants used the money to live lavishly, in part by driving cars such as McLaren Sennas, Rolls Royces, etc.

39.     All the statements made by Gaelen Whittemore, Domino Whittemore (on behalf of Defendants) and Mr. Sawyer as to the use of Ms. Feldman's investment were false, and they knew the statements to be false at the time they made them.  It was a scam ab initio that they created.  They intended to take Ms. Feldman's money by fraud and deceit.  Ms. Feldman relied upon their misrepresentations.  Defendants made knowingly false statements intending to induce Ms. Feldman to rely upon them, and unfortunately Ms. Feldman did rely upon those false statements and is a victim of Defendants' fraud for millions of dollars.

40.     In doing the above-described wrongful and fraudulent acts and engaging in the foregoing course of conduct, Defendants acted fraudulently, oppressively, maliciously, and in flagrant, aggravated, wanton, and reckless disregard of the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

41.     As set forth in detail above, the debt owed to Plaintiff is for money, property and/or services obtained by false pretenses, false representations and/or actual fraud.

42.     Pursuant to 11 U.S.C. § 523(a)(2), the discharge of Defendants' debt to Plaintiff should be denied.

43.     Plaintiff is entitled to damages in an amount to be established based on the evidence, plus interest, costs and attorney's fees.

44.     Plaintiff has been required to obtain the services of the Law Office of Hayes and Welsh to prosecute this action and is entitled to reasonable attorney's fees therefor.

/ / /

/ / /

/ / /

## SECOND CLAIM FOR RELIEF

### (Denial of Discharge of Debt - 11 U.S.C. § 523(a)(4))

45.     Plaintiff repeats, realleges and incorporates herein by reference each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

46.     As outlined in detail above, Plaintiff entrusted her money to Defendants to make bridge loans to others at high rates of interest and to then pay Plaintiff the principal plus interest.

47.     Defendants instead appropriated the monies for a use other than that for which it was entrusted.

48.     Defendants never intended to invest Plaintiff's money as represented, and instead used Plaintiff's money for an unauthorized purpose, i.e. to buy a McLaren Senna and to purchase other luxuries for themselves.

49.     As outlined in detail above, the circumstances indicate fraud by the Defendants.

50.     As set forth in detail above, the debt owed to Plaintiff is for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

51.     Pursuant to 11 U.S.C. § 523(a)(4), the discharge of Defendants' debt to Plaintiff should be denied.

52.     Plaintiff is entitled to damages in an amount to be established based on the evidence, plus interest, costs and attorney's fees.

53.     Plaintiff has been required to obtain the services of her attorneys to prosecute this action and is entitled to reasonable attorney's fees therefor.

## THIRD CLAIM FOR RELIEF

### (Denial of Discharge of Debt - 11 U.S.C. § 523(a)(6))

54.     Plaintiff repeats, realleges and incorporates herein by reference each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

55.     As outlined in detail above, Defendants willfully and maliciously injured Plaintiff by fraudulently obtaining control over Plaintiff's money with the intent to deprive her of her money, thereby converting Plaintiff's property without her knowledge or consent.

LAW OFFICE OF
HAYES & WELSH
A PROFESSIONAL CORPORATION
199 NORTH ARROYO GRANDE BLVB., SUITE 200
HENDERSON, NEVADA 89074
(702) 434-3444  FAX (702) 434-3739

56.    As outlined in detail above, Defendants willfully and maliciously injured Plaintiff by converting Plaintiff's property without her knowledge or consent and using Plaintiff's money for an unauthorized purpose.

57.    As outlined in detail above, Defendants willfully and maliciously injured Plaintiff by making material misrepresentations regarding their intentions to re-pay Plaintiff for the money entrusted to them.

58.    Based upon information and belief, Defendants' actions were done intentionally without justification and excuse.

59.    Plaintiff was injured as a result of Defendants' actions through the loss of her property.

60.    Pursuant to 11 U.S.C. § 523(a)(6), the discharge of Defendants' debt to Plaintiff should be denied.

61.    Plaintiff is entitled to damages in an amount to be established based on the evidence, plus interest, costs and attorney's fees.

62.    Plaintiff has been required to obtain the services of her attorneys to prosecute this action and is entitled to reasonable attorney's fees therefor.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

LAW OFFICE OF
HAYES & WELSH
A PROFESSIONAL CORPORATION
199 NORTH ARROYO GRANDE BLVB., SUITE 200
HENDERSON, NEVADA 89074
(702) 434-3444 FAX (702) 434-3739

**Wherefore,** Plaintiff prays for damages as follows:

a)  A determination that Defendants' debt to Plaintiff, including interest accrued at the legal rate, and the contractually awarded attorney's fees is non-dischargeable;

b)  Punitive damages according to proof;

c)  Attorneys' fees and costs of suits incurred herein; and

d)  Such other and further relief as the court deems proper.

Respectfully submitted,

DATED this 12th day of May, 2026.

**Machat & Associates, PC**

By: /s/Michael Machat
Michael Machat, Esq.
Pro hac vice pending
California State Bar Number 109475
8730 W. Sunset Blvd., Suite 250
W. Hollywood, CA 90069

Megan K. McHenry, Esq.
Nevada State Bar No. 9119
199 North Arroyo Grande Blvd., Suite 200
Henderson, NV 89074

*Attorneys for Plaintiff/Creditor,*
*Sonia Feldman*

LAW OFFICE OF
HAYES & WELSH
A PROFESSIONAL CORPORATION
199 NORTH ARROYO GRANDE BLVB., SUITE 200
HENDERSON, NEVADA 89074
(702) 434-3444  FAX (702) 434-3739