ROBERT E. ATKINSON, ESQ., Bar No. 9958
Email: robert@nv-lawfirm.com
**ATKINSON LAW ASSOCIATES LTD.**
376 E Warm Springs Rd, Suite 130
Las Vegas, NV 89119
Telephone: (702) 614-0600
*Attorney for Robert E. Atkinson, Trustee*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>MARK ANTHONY SAWYER and<br>JENNIFER ANN SAWYER<br><br>Debtors. | Case No. 26-12677-abl<br>Chapter 7<br><br>**DECLARATION OF ROBERT E. ATKINSON** |

I, ROBERT E. ATKINSON, declare as follows:

1. I am the chapter 7 trustee of the bankruptcy estate of debtors Mark Anthony Sawyer ("***Mark***") and Jennifer Ann Sawyer ("***Jennifer***") (collectively, the "***Debtors***"). I submit this declaration in support of my Objection to Claim of Homestead Exemption (the "***Objection***") filed concurrently herewith.

2. I am over the age of eighteen years and am competent to testify to the matters set forth herein. Except where a statement is made on information and belief, the facts stated in this declaration are within my personal knowledge. As to those matters stated on information and belief, I believe them to be true.

3. Based on my review of the grant, bargain, sale deed and the deed of trust recorded in the Official Records of the Clark County Recorder, Mark acquired the 6940 N. Jensen St property ("***Property***") in May 2017 for a purchase price of $1,500,000. Mark paid a down payment of approximately $500,000, and financed the balance by means of a loan in the original principal amount of $1,000,000, secured by a first-position deed of trust encumbering the Property. Based on my review of the Debtors' Schedule D, the unpaid principal balance secured by that first deed of trust as of the Petition Date was approximately $817,000. The land records do not show any other mortgage on the Property.

4. I anticipate that a sale of the Property will generate gross proceeds of approximately $2,700,000.

5. Pursuant to the stipulation and order entered in this case [ECF #90], the Debtors vacated the Property on July 28, 2026, and now reside elsewhere. I am presently in possession and control of the Property, and am preparing it to be listed for sale.

6. I have been informed that Mark is the subject of a formal investigation by the United States Securities and Exchange Commission, designated case No. SF-04657, concerning potential violations of the federal securities laws.

7. At a Section 341 meeting of creditors, Mark testified, in substance, that in January 2026 the Federal Bureau of Investigation executed a search of the Debtors' residence and seized computers and documents. That search occurred approximately ten weeks before the Petition Date. As of the date of this declaration, I am not aware of any criminal charges having been filed against either Debtor.

8. In the course of my investigation as Trustee, I communicated directly with Mark's ex-spouse, who confirmed to me that she has not received the scheduled $13,000.00 monthly alimony payments from Mark post-petition.

9. Attached hereto are two exhibits with true and correct copies of the following case rulings:

**Exhibit 1** *In re Papermaster*, No. 25-11564-cgb (Bankr. W.D. Tex. Mar. 2, 2026)
**Exhibit 2** *In re Prince*, No. 09-43627 (Bankr. E.D. Tex. July 25, 2011)

# # # # #

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, the best of my knowledge, information, and belief.

DATED: August 20, 2026

/s/ Robert E. Atkinson
ROBERT E. ATKINSON

# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT ★ WESTERN DISTRICT OF TEXAS ★

**Dated: March 02, 2026.**

Christopher G. Bradley

**CHRISTOPHER G. BRADLEY**
**UNITED STATES BANKRUPTCY JUDGE**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **STEVEN GERALD PAPERMASTER,** | § | **Case No. 25-11564-cgb** |
| | § | **Chapter 11** |
| | § | |
| **Debtor** | § | |

**MEMORANDUM OPINION ON OBJECTION TO CLAIMED HOMESTEAD EXEMPTION [ECF No. 36]**

## Introduction

The Bankruptcy Code limits how much of the value of a homestead a debtor may claim as exempt if the debtor owes a debt arising from the violation of state or federal securities laws. The debtor in this case owes debts totaling more than eleven million dollars arising from violations of state securities laws, as evidenced by a judgment in state court, to which he consented, that awarded each of two creditors "judgment on its claims asserted in this cause." (Each creditor had asserted, among other related claims, violations of state securities laws.)

Thus, the Bankruptcy Code's cap applies. The debtor may only exempt $214,000 of the value of his homestead, rather than the more than eight million dollars of equity he has sought to exempt.



AUTHENTICATED U.S. GOVERNMENT INFORMATION GPO

## Background

Debtor, Steven Gerald Papermaster, commenced this voluntary individual chapter 11 case on October 7, 2025. He elected to claim state exemptions under 11 U.S.C. § 522(b)(3).[1] He listed an interest in 96 Pascal Lane on his Schedule A/B with a value of $12,110,782.00.[2] The property is encumbered by a $4,000,000.00 lien held by Frost Bank and an $88,000.00 tax lien held by Travis County.[3] His Schedule C claims a homestead exemption worth the remaining $8,022,782.00 of equity in the property.[4]

On November 24, 2025, Creditors Race the Cresting Curl LLC and Leap of Ruleset LLC ("Race" and "Leap") timely filed their *Objection to Debtor's Claimed Homestead Exemption* (the "Objection") [ECF No. 36], arguing that Mr. Papermaster's homestead exemption should be capped at $214,000[5] under 11 U.S.C. § 522(q)(1)(B)(i) because he owes them a debt arising from securities fraud. Mr. Papermaster filed a timely response.[6] Race and Leap filed a reply in further support,[7] and Mr. Papermaster filed a brief in opposition.[8]

The Court held a hearing in this matter on February 4, 2026.

## Legal Standards

A debtor's homestead exemption is capped at $214,000 if "the debtor owes a debt arising from any violation of the Federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934), any State securities laws, or any regulation or order issued under Federal securities laws or State securities laws."[9] There is a savings clause: the exemption cap does not apply to the extent the

[1] ECF No. 13 at 23. Of course, "Texas residents enjoy an unlimited homestead exemption" as to value. *In re Bounds*, 491 B.R. 440, 443 (Bankr. W.D. Tex. 2013) (citing Tex. Const. Art. XVI, § 50).
[2] ECF No. 13 at 7.
[3] ECF No. 13 at 36, 38.
[4] ECF No. 13 at 23.
[5] $214,000 is the inflation-adjusted amount effective as of April 1, 2025, under 11 U.S.C. § 104. Adjustment of Certain Dollar Amounts Applicable to Bankruptcy Cases, 90 Fed. Reg. 8941, 8941 (Jan. 30, 2025).
[6] ECF No. 48.
[7] ECF No. 54.
[8] ECF No. 66.
[9] 11 U.S.C. §522(q)(1)(B)(i).

homestead "is reasonably necessary for the support of the debtor and any dependent of the debtor."[10]

"[T]he objecting party has the burden of proving that an exemption was not properly claimed."[11] This must be proven by a preponderance of the evidence.[12] The objecting party is also required to show by a preponderance of the evidence that the savings clause exception is not met.[13]

## Analysis

### I. Mr. Papermaster owes a debt "arising from" a violation of State securities laws.

In 2020, Race and Leap sued Mr. Papermaster in state court for violations of the Texas Securities Act,[14] fraud, statutory fraud, and unjust enrichment.[15] Each of these claims emerged essentially from the same conduct. Mr. Papermaster was claimed to have induced Race and Leap to invest in his company, Nano Global Corp ("Nano"), based on false information about Nano's current and future business prospects.

A consent judgment entered in the state court case awards Race "judgment on its claims asserted in this cause" against Mr. Papermaster and also awards Leap "judgment on its claims asserted in this cause" against Mr. Papermaster.[16] The amount of the judgment is $5,678,196.99 for Race and $5,924,500.74 for Leap.[17] These debts are listed in Mr. Papermaster's bankruptcy schedules and are not listed as disputed.[18]

---

[10] 11 U.S.C. § 522(q)(2); 11 U.S.C. § 522(p)(1)(A) and (D).
[11] Fed. R. Bankr. P. 4003(c).
[12] *Bounds*, 491 B.R. at 449.
[13] *Id.*
[14] The Texas Securities Act has since been recodified into Title 12 of the Texas Government Code, effective January 1, 2022.
[15] The live pleading in the state court case at the time of the consent judgment is filed on the record at ECF No. 36-2. The relevant portions are pages 13–17. Race and Leap also sued Nano in the same lawsuit for the same claims and for suit on a promissory note. The claims against Nano were resolved in a separate consent judgment.
[16] ECF No. 36-3 at 2.
[17] *Id.*
[18] ECF No. 13 at 1.

Mr. Papermaster argues that because the consent judgment lacks "specific, subordinate findings," it cannot have a preclusive effect in this Court.[19] Instead, he wants this Court to hold its own evidentiary hearing to try the issue of whether the debts he owes to Race and Leap in fact arise from securities violations.

But a consent judgment is a valid judgment under Texas law and has the same effect as any other judgment.[20] And the judgment entered in Texas court clearly establishes that the debts owed by Mr. Papermaster to Race and to Leap do in fact arise from violations of securities laws. Under Texas law, "[a]n agreed judgment is to be construed in the nature of a contract."[21] If an agreed judgment is unambiguous, the Court cannot consider testimony to explain its meaning.[22] "[W]hether a written agreement is ambiguous is a question of law which must be decided by examining the contract as a whole in light of the circumstances at the time the contract was formed."[23] "[F]or an ambiguity to exist, the interpretation asserted by each party must be reasonable."[24]

---

[19] Debtor's Resp., ECF No. 48 at 2–5.

[20] *E.g.*, *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex. 2000) ("An agreed judgment has the same effect as any court judgment."). For the avoidance of doubt, a consent judgment and agreed judgment are the same thing. *See Judgment*, Black's Law Dictionary (12th ed. 2024) (specifying that a consent judgment is "also termed *agreed judgment*" (emphasis in original)). Numerous Fifth Circuit and Texas cases demonstrate the well-established principle that "[a]n agreed judgment is entitled to full res judicata effect." *U.S. v. Shanbaum*, 10 F.3d 305, 313–14 (5th Cir. 1994) (citing *U.S. v. Int'l Bldg. Co.*, 345 U.S. 502, 505–06 (1953); *Jones v. Texas Tech Univ.*, 656 F.2d 1137, 1144 (5th Cir. 1981); and *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach. Inc.*, 575 F.2d 530, 538–39 (5th Cir. 1978)); *see also Smith v. Hutson*, 251 S.W.3d 808, 825 (Tex. App.—Fort Worth 2008, pet. denied) (noting that under Texas law, agreed judgments can support application of both res judicata and collateral estoppel doctrines, and citing *St. Raphael Med. Clinic, Inc. v. Mint Med. Physician Staffing, LP*, 244 S.W.3d 436, 440 (Tex. App.—Houston [1st Dist.] 2007, no pet.); and *Jistel v. Tiffany Trail Owners Ass'n*, 215 S.W.3d 474, 480 (Tex. App.—Eastland 2006, no pet.)).

[21] *Argonaut Ins. Co. v. Allstate Ins. Co.*, 869 S.W.2d 537, 540 (Tex. App.—Corpus Christi–Edinburg 1993, writ denied) (citing *Barrientes v. Bd. of Trs., Harlandale Indep. School Dist.*, 764 S.W.2d 28, 29 (Tex. App.—San Antonio 1989, writ denied)).

[22] *See Gulf Ins. Co.*, 22 S.W.3d at 422.

[23] *Floyd v. Fischer (In re Pearson)*, 394 B.R. 133, 141 (Bankr. S.D. Tex. 2008) (first citing *Temple-Inland Forest Prods. Corp. v. United States*, 988 F.2d 1418, 1421 (5th Cir. 1993), and then citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)).

[24] *In re El Paso Refinery, L.P.*, 244 B.R. 613, 622 (Bankr. W.D. Tex. 2000) (citing *Columbia Gas*, 940 S.W.2d at 589)).

The state court judgment against Mr. Papermaster is unambiguous. It specifically awards judgment to Race and Leap on their "claims asserted in this cause against Defendant Steven G. Papermaster." It does not leave any room for doubt that judgment was entered for Race and Leap and against Mr. Papermaster on each claim that each plaintiff asserted against him in the lawsuit, including each claim for violations of the Texas Securities Act.[25] Because a claim for violations of the Texas Securities Act is a violation of "State securities laws,"[26] Mr. Papermaster necessarily owes a debt arising from a violation of state securities laws.

Mr. Papermaster contends that the agreed judgment was intended only as a "pocket judgment"[27] designed to give effect to his guarantee of certain debts owed by Mr. Papermaster's company Nano (which defaulted on payment of those debts).[28] According to Mr. Papermaster, his understanding at the time the judgment was entered was that it was not intended to admit liability for the substance of any of the claims.[29]

The Court finds the story told by Mr. Papermaster unconvincing. Mr. Papermaster's testimony was generally not credible, and the Court gives little to no weight to his general characterizations of his or any other parties' intentions with respect to the judgment. While it is *conceivable* that Mr. Papermaster might, subjectively speaking, have misunderstood the legal effect of the agreed judgment,

---

[25] *See Hardwick v. Anderson as Co-Trs. of Allan G. Anderson Revocable Living Tr.*, 658 B.R. 123, 132–33 (E.D. Tex. 2024) (analyzing a state court petition to determine the meaning of a final agreed judgment). For a discussion of distinctions between *Hardwick* and the present case, see the last few paragraphs of this section of this opinion.

[26] *See Bounds*, 491 B.R. at 449–50 (finding that violations of the Texas Securities Act are securities violations under state security law and satisfy § 522(q)(1)(B)(i)).

[27] *See* James K. McClendon, Kris R. Kwolek & Jesse B. Butler, *Drafting Settlement Agreements*, The Advocate (Texas), Fall 2007, at 28, 28 (describing a "pocket judgment" as "an agreed judgment for the full amount of [a plaintiff's] claim" to be kept "in [a plaintiff's] pocket" unless a defendant defaults on settlement payments).

[28] *See* Debtor's Br. in Opp'n, ECF No. 66 at 8–9. Mr. Papermaster makes much of the fact that the amounts in the agreed judgment coincide with those in the guarantee, but even if that agreement is where the precise numbers came from, the amounts also correspond roughly to the alleged losses that were at issue in the securities action. *See generally* ECF No. 36-2. In any case, the text of the judgment is what this Court will give force to, in light of Texas law and the Bankruptcy Code.

[29] Mr. Papermaster asserted the attorney-client privilege with regard to communications with his state court attorney about the agreed judgment, but he acknowledged that he was advised by counsel in making the agreement.

the Court doubts it. First, Mr. Papermaster is experienced in these matters. He testified to a long history of advising state and federal government officials on economic policy matters and his involvement in many business deals. The Court is skeptical that he agreed to this judgment so carelessly. Second, Mr. Papermaster was represented in the state court lawsuit by competent and experienced counsel who is presumed to have considered and advised him on the implications of the judgment. Mr. Papermaster's efforts to resist the plain implications of the judgment to which he, after obtaining legal advice from experienced counsel, agreed, cannot succeed.[30] Even were the Court allowed to consider his alleged contrary intentions in interpreting this unambiguous agreed judgment,[31] it would find them unconvincing.

In reality, the facts and circumstances of the agreement support the Court's view that the parties' intentions at the time accord with the text of the judgment they all agreed to, which expressly awards victory to each plaintiff on "*its claims asserted in this cause*" against Mr. Papermaster. If the intention at the time had been to obtain some other result, that could easily have been accomplished. Negotiating a pocket judgment as part of a settlement and/or a guarantee obligation is utterly routine, and such a judgment could easily have been obtained and given force *without* giving each plaintiff "judgment on its claims asserted in this cause" against Mr. Papermaster. If the goal is to memorialize and give force to a monetary obligation

---

[30] Indeed, for the consent judgment to be valid under Texas law, Mr. Papermaster must have consented "at the time it [was] rendered." *Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex. 1995). There was no indication that Mr. Papermaster withdrew consent prior to the judgment's entry. *See Welkener v. Welkener*, 71 S.W.3d 364, 367 (Tex. App.—Corpus Christi-Edinburg 2001, no pet.) ("A party may revoke his consent to settle a case any time before judgment is rendered. However, '[a] judgment is in fact rendered whenever the trial judge officially announces his decision in open court . . . in his official capacity for his official guidance whether orally or by written memorandum the sentence of law pronounced by him in any cause.'" (alteration in original) (citation omitted) (quoting *Samples Exterminators v. Samples*, 640 S.W.2d 873, 874–75 (Tex. 1982))). As noted, the debt is also listed in Mr. Papermaster's schedules as undisputed. And in any case, the judgment is now long final, and this Court does not have the jurisdiction to review a final state court judgment. *See, e.g.*, *In re Nazu, Inc.*, 350 B.R. 304, 313–14 (Bankr. S.D. Tex. 2006) (explaining the Rooker-Feldman doctrine).

[31] *See also URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 757 (Tex. 2018) ("[S]urrounding facts and circumstances cannot be employed to 'make the language say what it unambiguously does not say' or 'to show that the parties probably meant, or could have meant, something other than what their agreement stated.'" (footnotes omitted) (first quoting *First Bank v. Brumitt*, 519 S.W.3d 95, 110 (Tex.2017), and then quoting *Anglo-Dutch Petrol. Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 451 (Tex. 2011))).

or settlement without any concession of liability on a claim, parties regularly enter into enforceable settlement agreements (often with pocket judgments appended thereto), and then simply stipulate to the dismissal of a case, or even a dismissal conditioned on payment of a given amount—again, all without a blanket grant of "judgment on its claims asserted in this cause." There are also cases in which an agreed judgment expressly states that it should *not* be construed as an admission of particular claims or issues.[32] But any such limiting language is conspicuously missing here.

Ultimately, the plain language of the agreed judgment governs. The agreed judgment explicitly awards judgment against Mr. Papermaster on each claim including the securities fraud claim. For this Court to refuse to give due legal effect to that judgment would be to disrespect the Texas laws and courts under which that judgment was entered.

The analysis above focuses most of all on the statutory text of the Bankruptcy Code and its interaction with Texas law and the state court judgment at issue here. But the Court has also spent considerable time with the cases cited by the parties as well as many additional cases. There is a significant body of law on the issue of the effect of similar agreed judgments, mostly in the context of nondischargeability actions under § 523(a)(19).[33] The body of case law on § 523(a)(19) is helpful in some ways, and it provides general support for the Court's holding here. However, the Court cannot rely on § 523(a)(19) case law blindly without taking account of the statutory differences from § 522(q)(b)(1).

Both § 522(q) and § 523(a)(19) were enacted to ensure that securities fraudsters do not reap undue benefits at the expense of their victims and other creditors.[34] At

---

[32] *E.g. State v. Nicholas Mach. Co., Inc.*, No. 317,110, 1981 WL 11453, at *2 (Tex. Dist. Jan. 30, 1981) (reviewing state court agreed judgment that specifically stated "[t]his Agreed Judgment shall not be construed as an admission by any defendant with respect to any issue of law or fact").

[33] Indeed, that issue may soon be litigated before this Court, because there is a pending adversary proceeding, also by Race and Leap, seeking to find Mr. Papermaster's debts to them nondischargeable. *See generally* Pls.' Compl., *Race the Cresting Curl, LLC et al. v. Papermaster*, No. 25-01067-cgb, ECF No. 1.

[34] *See In re Presto*, 376 B.R. 554, 592 (Bankr. S.D. Tex. 2007) ("The addition of § 523(a)(19) was designed to close a 'loophole' which allowed debtors convicted of securities fraud or other securities violations to discharge the debt owed to their victims." (citing *Smith v. Gibbons (In re*

the same time, the way each provision accomplishes this goal is distinct; each could be characterized as in some ways broader and in some ways narrower than the other; careful attention must be paid to the application of each provision in given factual circumstances. The distinctions between § 523(a)(19) and § 522(q)(1)(B) are important because they guide the extent to which the § 523(a)(19) case law can used in § 522(q) analyses, and vice versa. The parties' briefing and arguments do not appear to reflect a thorough appreciation of the distinctions, which is understandable because they have not been particularly elaborated in the existing case law. The Court accordingly provides some guidance here as to its understandings of those distinctions and how they bear on this case.

First, because § 523(a)(19)(B) contains a list of what a relevant debt can result from—including a judgment, consent order, or settlement agreement—numerous courts have indicated that liquidation of the debt outside of bankruptcy court is *required*, unlike most other nondischargeable debts, which can be liquidated in the bankruptcy court itself.[35] This is not relevant in § 522(q), which simply requires that there *be* a debt of the given type and not that it be liquidated. And here, in any case, the debt is already liquidated in the state court judgment.

Second, again because of how § 523(a)(19)(B) closely ties nondischargeability to a result in another forum, courts have held that no state law preclusion analysis is needed—such analysis has effectively been superseded by statute.[36] Stated otherwise, while a bankruptcy court, when confronted with a Texas state court judgment (including a consent judgment), would typically have to

---

*Gibbons)*, 289 B.R. 588, 592 (Bankr. S.D.N.Y. 2003))); *Bounds*, 491 B.R. at 444 (discussing purpose of § 522(q)).

[35] *E.g.*, *Wright v. Minardi (In re Minardi)*, 536 B.R. 171, 192 (Bankr. E.D. Tex. 2015) ("The proper interpretation of § 523(a)(19), even as amended, requires that a tribunal other than the bankruptcy court determine the liability aspect–e.g., whether a federal or state securities violation or some type of related fraud has occurred." (first citing *McGraw v. Collier (In re Collier)*, 497 B.R. 877, 902–03 (Bankr. E.D. Ark. 2013), and then citing *Terek v. Bundy (In re Bundy)*, 468 B.R. 916 (Bankr. E.D. Wash. 2012))). *See also Voss v. Pudjak (In re Pudjak)*, 462 B.R. 560, 575 (Bankr. D.S.C. 2011) ("Section 523(a)(19) parallels other nondischargeability provisions that require a determination outside the bankruptcy court as a condition precedent for finding the debt dischargeable."). For a general discussion of the bankruptcy court's jurisdiction to liquidate nondischargeable debts, see *Morrison v. W. Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d 473, 479–80 (5th Cir. 2009).

[36] *See, e.g.*, *Minardi*, 536 B.R. at 192–93.

conduct a Texas law preclusion analysis in order to find that it establishes a nondischargeable debt,[37] not so under § 523(a)(19)(B): under that provision, the court has no need to conduct a preclusion analysis as long as the debt "results from" one of the listed sources, including a consent judgment or even a mere settlement agreement. By contrast, § 522(q) lacks this explicit reference to a debt "result[ing] from" a record in some other proceeding or agreement, so there is a good argument that courts proceeding with analysis under § 522(q) must conduct a preclusion analysis under state law. This potential distinction is not important here because the judgment against Mr. Papermaster passes the preclusion test—as explained above, the Court has interpreted it, and granted it the appropriate deference, pursuant to Texas law and in accordance with the Bankruptcy Code.

Third, § 522(q)(1)(B) has a somewhat different ambit in terms of "predicate offenses" (so to speak) that trigger its application. For instance, while § 523(a)(19)(A)(ii) applies when a debt is for "common law fraud, deceit, or manipulation in connection with the purchase or sale of any security," the scope of "fraud, deceit, or manipulation" that triggers § 522(q)(1)(B)(ii) is limited to that undertaken "in a fiduciary capacity or in connection with the purchase or sale of any security registered under section 12 or 15(d) of the Securities Exchange Act of 1934 or under section 6 of the Securities Act of 1933."

The potential impact of this distinction can be illustrated in this case, although it ultimately does not affect the outcome. Race and Leap have argued that, like in *Hardwick*—a § 523(a)(19) case—*every* individual claim asserted against Mr. Papermaster in the state court lawsuit would subject him to the effects of § 522(q).[38]

---

[37] *E.g.*, *Hong Bich Chau v. Gilbert (In re Van Dang)*, 560 B.R. 287, 291 (Bankr. S.D. Tex. 2016) ("Issue preclusion, or collateral estoppel, applies to nondischargeability findings under § 523(a). A bankruptcy court looks to the preclusion rules in the state where the judgment was rendered." (citations omitted) (first citing *Grogan v. Garner*, 498 U.S. 279, 285 (1991), and then citing *Plunk v. Yaquinto (In re Plunk)*, 481 F.3d 302, 307 (5th Cir. 2007))).

[38] In contrast to the judgment here, in *Hardwick*, the court found that the judgment was ambiguous because it did not specify on which grounds it was in favor of the plaintiff. *Hardwick*, 658 B.R. at 131–32. Therefore, the court had to review the live pleading in the case and determine that *all* claims asserted in the lawsuit were within the scope of 11 U.S.C. § 523(a)(19)(A) (to confirm that regardless of *which* claim was in favor of the plaintiff, any one of them would independently satisfy the statute). *Id.* at 132–33. However, here, as discussed above, the unambiguous agreed judgment clearly awards judgment on each plaintiff's "claims asserted in this cause" (which of course, includes the Texas Securities Act claims) against Mr. Papermaster.

This is incorrect. For instance, whereas the fraud claims asserted against Mr. Papermaster would appear to satisfy the § 523(a)(19)(A)(ii) test, they do not satisfy § 522(q)(1)(B)(ii) because they are not "in connection with the purchase or sale of any security registered under section 12 or 15(d) of the Securities Exchange Act of 1934 or under section 6 of the Securities Act of 1933."[39] Still, this statutory distinction does not change the outcome here. As explained in more detail above, the agreed judgment establishes a debt based on Texas Securities Act violations, which is sufficient to trigger application of § 522(q)(1)(B)(i), even if some of the other claims asserted against him and decided in the agreed judgment might not have triggered § 522(q).

In sum, Race and Leap successfully met their burden and proved by a preponderance of the evidence that Mr. Papermaster owes a debt arising from a violation of state securities laws. Under § 522(q)(1)(B)(i), then, his homestead exemption is limited to the statutory cap of $214,000.

## II. Mr. Papermaster has equity in his home above the statutory exemption cap of $214,000.

Under § 522(q), the Court must next determine whether Mr. Papermaster's equity in his home exceeds the statutory exemption cap.[40] This is undisputed. Mr. Papermaster's schedule A/B lists the value of his home as $12,110,782.00.[41] Even after subtracting the known liens on the home, Mr. Papermaster's equity is $8,022,782.00, well above the statutory cap of $214,000.[42] Mr. Papermaster claimed this amount as exempt in his Schedule C and also admitted the amount in his response to the Objection.[43]

---

[39] The convertible promissory notes state that the securities are not registered "under the United States Securities Act of 1933 or under any securities laws of any State of the United States," ECF No. 36-2 at 24, 33, and there was no evidence presented that the securities were registered under the 1934 Act.

[40] *See Bounds*, 491 B.R. at 446.

[41] ECF No. 13 at 7.

[42] *See* ECF No. 13 at 23, 36, 38; 11 U.S.C. § 522(q)(1)(B)(i); 11 U.S.C. § 104.

[43] ECF No. 13 at 23, 36, 38; ECF No. 48 at 3.

## III. Mr. Papermaster's homestead is not reasonably necessary for his support or that of his dependent.

Race and Leap, as the movants, have the burden of proving by a preponderance of the evidence that Mr. Papermaster's homestead is not reasonably necessary for his support or that of his dependent, his non-filing wife.[44] (Mr. Papermaster lists no dependents on his schedules. However, for the purposes of the § 522 analysis, his non-filing wife counts as a dependent.[45]) The evidence establishes that this homestead is not reasonably necessary, and therefore Mr. Papermaster is not entitled to exempt any amount above $214,000.

Determining the extent to which the savings clause should apply is at the discretion of the court; we are to "ensur[e] that the proverbial shield cannot be used as a sword."[46] The court should consider "other income and exempt property of the debtor, present and anticipated, and that the appropriate amount to be satisfied for the debtor ought to be sufficient to sustain basic needs, not related to his former status in society or the lifestyle to which he is accustomed, but taking into account the special needs of the debtor."[47] Other relevant factors include "the debtor's age, health, future earnings capacity, and necessary expenditures."[48]

---

[44] *See Bounds*, 491 B.R. at 449 (requiring the movants "to prove by a preponderance of the evidence that the Debtor's claim of homestead is not valid . . . includ[ing] the burden of showing that the savings clause exception is not met" (citing *In re Abbott*, 466 B.R. 118, 134 (Bankr. S.D. Ohio 2012))). It is unclear if Mr. Papermaster even intends to argue that his homestead is reasonably necessary for his support, but because the burden of proof is on the movants, the Court will consider this issue regardless.

[45] *See* 11 U.S.C. § 522(a)(1) ("In this section "dependent" includes spouse, whether or not actually dependent . . . .").

[46] *See In re Carmichael*, 100 F.3d 375, 380 (5th Cir. 1996) (interpreting the phrase "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor" in § 522(d)(10)(E)); *Presto*, 376 B.R at 598 (applying the *Carmichael* analysis to the same phrase in § 522(q)(2)).

[47] *Presto*, 376 B.R. at 598 (quoting *In re Grant*, 40 B.R. 612, 613–14 (Bankr. N.D. Tex. 1984)).

[48] *Bounds*, 491 B.R. at 453 (citing *Presto*, 376 B.R. at 598). Factors that other courts have considered include "(1) the debtor's present and anticipated living expenses, (2) the health of the debtor and his/her dependents, (3) debtor's job skills and education, (4) debtor's other assets, (5) debtor's ability to save for retirement, (6) the special needs of the debtor and his or her dependents, and (7) debtor's continuing financial obligations such as alimony or child support." *Bounds*, 491 B.R. at 452 (citing *In re Jackson*, 376 B.R. 75, 80 (Bankr. D. Conn. 2007), *aff'd, Jackson v. Novak*, 593 F.3d 171 (2nd Cir. 2010)). *Jackson* is a case about § 522(d)(11)(E), which has the same language as (d)(10)(E).

Mr. Papermaster and his non-filing wife are both listed as unemployed, but all household expenses—more than *seventeen thousand dollars per month*, according to his own court filings—are paid by an Abu Dhabi entity pursuant to some sort of an arrangement that was not explained satisfactorily on the record.[49] In addition, Mr. Papermaster appeared at the hearing to be able-bodied and mentally capable—in other words, perfectly able to get a job if he needed to supplement his sizeable Abu Dhabi-derived income. At the hearing, Mr. Papermaster testified that he was unable to work any job pursuant to some sort of an agreement entered into by his former receiver. Mr. Papermaster did not produce the agreement or any other evidence about its contents, and his testimony on this point was vague and unconvincing. Mr. Papermaster's testimony was not credible. There was no testimony as to his wife needing any special support, and the evidence at the hearing supports the conclusion that she also could be employed if she chose.[50]

Currently, it appears that Mr. Papermaster's property—which would perhaps better be described as a "mansion" or an "estate"—is large enough to house many others in addition to him and his wife. His wife's parents have apparently lived at the property for many years. Mr. Papermaster's children are all adults; nonetheless, one of Mr. Papermaster's adult sons, his wife, and their child currently live in the home.[51] Again, not one of these guests was identified as a dependent in his bankruptcy schedules (nor do those schedules reflect any rental income).[52] On cross-

---

[49] ECF No. 13 at 62 ("Debtor's household living expenses are paid by NG-Arm Holdings, LLC whose address is Masdar City, Presidential Flight, Khalifa City, KLGQ Building, Abu Dhabi, United Arab Emirates 02340.").

[50] Mr. Papermaster testified that he did not know if the agreement prevented his wife from getting a job, but he also testified that she is not a party to the agreement. Any suggestion that it bars her from obtaining any gainful employment is even more unconvincing than Mr. Papermaster's statements about his own ability to earn money in light of supposed contractual restrictions.

[51] Mr. Papermaster initially stated on direct examination that his adult son and his family live at the property part-time. However, on cross-examination he stated that no one other than himself, his wife, and his wife's parents list the property as their permanent residence; but he then also indicated that the home is his adult son's permanent residence. He also said he did not know if the property was his in-laws' permanent residence, despite testifying that they lived at the property since 1994. In any case, the overall impression of the testimony is that this is no hardship arrangement: It appears rather to be a choice to live in a spacious and comfortable environment as desire, rather than necessity, dictates.

[52] Mr. Papermaster did not argue that the homestead was necessary for the support of his extended family members. However, if he did, this argument would fail based on his own inconsistent

examination, Mr. Papermaster was unable to recall how many rooms the home has. Mr. Papermaster also did not give a clear answer as to whether there are multiple structures on the property, but the Travis Central Appraisal District Property Summary Report, admitted as Movant's Exhibit 4, appears to contemplate a three-story structure built in 1993 and a two-story structure built in 1997.[53] As the more-than-$8-million valuation of the land alone in that report demonstrates, the property lies in an extremely desirable and wealthy part of this region.[54]

In any case, all of these exact details are immaterial; the overall picture is crystal clear. Mr. Papermaster is plainly able to "sustain basic needs" (and then some) without his full homestead exemption.[55] There is no reason Mr. Papermaster could not downsize to a more affordable home in a more modest neighborhood, especially with the benefit of the $214,000 that the Bankruptcy Code still allows him.[56] He receives a very large (albeit unexplained) income and did not provide any convincing evidence that he could not earn money if needed.

Race and Leap easily met their burden and proved that the exemption is not reasonably necessary for Mr. Papermaster's support or that of his non-filing wife. The Court finds that no additional amount above the statutory $214,000 is exempt.

## IV. Conclusion

Texas has a historically strong homestead exemption.[57] However, Congress preempted this exemption with the § 522(q)(1)(B)(i) exception for situations just like Mr. Papermaster's: so that a debtor may not continue to live in a lavish home while those he defrauded are left without recompense.[58]

---

testimony and because it is certainly not "reasonably necessary" for three couples and a child to live in a multi-structure property totaling more than fourteen thousand square feet (and with more bedrooms than Mr. Papermaster can ostensibly remember).

[53] ECF No. 63-4 at 3–4.

[54] *See id.* at 2 (valuing the land alone at $8,135,478, compared to the improvement homesite value of $3,530,136).

[55] *See Presto*, 376 B.R. at 598 (quoting *In re Grant*, 40 B.R. 612, 613–14 (Bankr. N.D. Tex. 1984)).

[56] *See Bounds*, 491 B.R. at 453–54.

[57] *See id.* at 443–44.

[58] *See Presto*, 376 B.R. at 592; *see also In re Oliver*, 649 B.R. 206, 210 (Bankr. E.D. Cal. 2023) (explaining that § 522(q) "is designed to close the 'mansion loophole' for persons who commit specified forms of misconduct").

**THEREFORE, IT IS SO ORDERED** that *Objection to Debtor's Homestead Exemption* [ECF No. 36] is GRANTED. Pursuant to 11 U.S.C. § 522(q)(1)(B)(i), Debtor's homestead exemption in 96 Pascal Lane, Austin, Texas, 78746 is thereby capped at $214,000.

**IT IS FURTHER ORDERED** that no amount above the statutory $214,000 shall be considered exempt.

# # #

# EXHIBIT 2

EOD
07/25/2011

**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| | § | |
| | § | |
| **In Re:** | § | **Case No.: 09-43627** |
| **Clovis L. Prince** | § | **Chapter No.: 7** |
| | § | |
| **Debtor** | § | |

**ORDER ON AMENDED OBJECTIONS TO DEBTOR'S EXEMPTIONS FILED BY AMERICAN BANK OF TEXAS AND CHAPTER 7 TRUSTEE**

On May 10, 2011, the Court heard the Amended Objections to Debtor's Exemptions ("Objections to Exemptions") filed by American Bank of Texas ("American Bank") and the Chapter 7 Trustee. The Objections to Exemptions seek to limit the amount of Debtor's claimed exemption of his homestead in Murphy, Texas, and to invalidate Debtor's claimed exemption of certain personal property. The Court exercises its core jurisdiction over this matter, *see* 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(A), (B) and (O), and makes the following findings of fact and conclusions of law.

1. American Bank and the Chapter 7 trustee provided due and proper notice of the Objections to Exemptions, and the hearing thereon, in accordance with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Eastern District of Texas.

2. Clovis Prince ("Debtor") is married to Katherine M. Robinson.

3. The real property located at 318 Covington Court, Murphy, Texas 75094 (the "Covington Court Property") is Debtor's homestead under 11 U.S.C. § 522 and Texas Property Code § 41.002. Debtor is entitled to a homestead exemption for the

Covington Court Property under 11 U.S.C. § 522 and Texas Property Code §§ 41.001-41.002.

4. Debtor has been convicted of felonies (as defined in 18 U.S.C. § 3156) in *United States of American v. Clovis Prince*, Case No. 4:09-CR-161, in the United States District Court for the Eastern District of Texas. In particular, on December 9, 2010, a jury found Debtor guilty of (1) bank fraud in connection with loans that Debtor or his companies obtained from various banks, including American Bank; (2) engaging in monetary transactions in property derived from unlawful activity; (3) making false declarations under oath in a proceeding in his bankruptcy; (4) making false declarations in the statement of financial affairs and bankruptcy schedules submitted in his bankruptcy and in the bankruptcies for companies he owns and controls; and (5) making false declarations in his Rule 2004 examination taken in his bankruptcy (the "Guilty Verdict").

5. The Guilty Verdict includes the following specific violations of Title 18 of the United States Code:

a. In violation of 18 U.S.C. § 1621(1), Debtor knowingly and willfully gave false testimony under oath during the creditors' meeting on December 14, 2009 in his bankruptcy when he testified that he was not a beneficiary of the Clovis L. Prince, Katherine M. Robinson, and Tamika D. Prince Trust.

b. In violation of 18 U.S.C. § 1621(1), Debtor knowingly and willfully gave false testimony under oath during the creditors' meeting on December 14, 2009 when he testified that he failed to disclose transfers of real property on the Bankruptcy Schedules and Statements

of Financial Affairs in his bankruptcy and in Case No. 09-43628, *In re Crown Project Management, Inc.*; and in Case No. 09-43645, *In re C. Prince & Associates Consulting, Inc.* because he transferred, or caused the transfer, of the real property in the "normal" or "ordinary course of business."

c. In violation of 18 U.S.C. § 1621(2), Debtor knowingly and willfully provided false information under penalty of perjury in the Statement of Financial Affairs filed in his bankruptcy when he answered "None" to the required disclosure 10(a): "List all other property, other than property transferred in the ordinary course of business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case."

d. In violation of 18 U.S.C. § 1621(2), Debtor knowingly and willfully provided false information under penalty of perjury in the Statement of Financial Affairs filed in his bankruptcy when he answered "None" in response to the required disclosure 10(b): "List all property transferred by the debtor within ten years immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary."

e. In violation of 18 U.S.C. § 1621(2), Debtor knowingly and willfully provided false information under penalty of perjury on the Statement of Financial Affairs filed in his bankruptcy when he answered "None"

in response to the required disclosure 14: "List all property owned by another person that the debtor holds or controls."

f. In violation of 18 U.S.C. § 1621(2), Debtor knowingly and willfully provided false information under penalty of perjury on the Statement of Financial Affairs filed in Case No. 09-43645; *In re C. Prince & Associates Consulting, Inc.* when he answered "C. Prince & Associates sold one property in the normal course of business" in response to the required disclosure 10(a): "List all other property, other than property transferred in the ordinary course of business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case."

g. In violation of 18 U.S.C. § 1621(2), Debtor knowingly and willfully provided false information under penalty of perjury on the Statement of Financial Affairs filed in Case No. 09-43628; *In re Crown Project Management, Inc.* when he answered "Crown sold some properties in the normal course of business" in response to the required disclosure 10(a): "List all other property, other than property transferred in the ordinary course of business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case."

h. In violation of 18 U.S.C. § 1621(2), Debtor knowingly and willfully provided false information under penalty of perjury on the Statement of Financial Affairs filed in Case No. 09-43628; *In re Crown Project*

*Management, Inc.* when he answered "None" in response to the required disclosure 10(b): "List all property transferred by the debtor within ten years immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary."

i. In violation of 18 U.S.C. § 1621(2), Debtor knowingly and willfully provided false information under penalty of perjury on the Schedule B—Personal Property filed in his bankruptcy when he answered "None" in response to the required disclosure 20 to list: "Contingent and noncontingent interests in the estate of a decedent, death benefit plan, list insurance policy, or trust."

j. In violation of 18 U.S.C. § 1621(2), Debtor knowingly and willfully provided false information under penalty of perjury on the Schedule B—Personal Property filed in his bankruptcy when he answered "None" in response to the required disclosure 35 to list: "Other personal property of any kind not already listed. Itemize."

k. In violation of 18 U.S.C. § 152(1), Debtor knowingly and fraudulently concealed from a trustee and other officer of the court charged with the control and custody of property, and, in connection with Debtor's bankruptcy and Case No. 09-43628, *In re Crown Project Management, Inc.*; and Case No. 09-43645, *In re C. Prince & Associates Consulting, Inc.*, Debtor knowingly concealed from creditors and the United States Trustee property belonging to the estate of Debtor, including real

estate, an interest in the Clovis L. Prince and Katherine M. Robinson Trust, and an interest in the Clovis L. Prince, Katherine M. Robinson, and Tamika D. Prince Trust.

l. In violation of 18 U.S.C. § 152(2), Debtor knowingly and fraudulently provided false information under penalty of perjury on Schedule A—Real Estate, Schedule B—Personal Property, and Statement of Financial Affairs, and knowingly and willfully gave false testimony under oath at the creditors' meetings on December 14, 2009, when Debtor falsely claimed that real estate transfers were made in the "normal" or "ordinary course of business" and falsely denied that he was a beneficiary of the Clovis L. Prince, Katherine M. Robinson, and Tamika D. Prince Trust in his bankruptcy and in Case No. 09-43628, *In re Crown Project Management, Inc.*; and in Case No. 09-43645, *In re C. Prince & Associates Consulting, Inc.*

m. In violation of 18 U.S.C. § 152(3), Debtor knowingly and fraudulently provided false information under penalty of perjury on the Bankruptcy Schedules and Statements of Financial Affairs filed in his bankruptcy and in Case No. 09-43628, *In re Crown Project Management, Inc.*; and in Case No. 09-43645, *In re C. Prince & Associates Consulting, Inc.* when he failed to disclose property transfers and interests in real estate and trusts.

n. In violation of 18 U.S.C. § 152(9), Debtor knowingly and fraudulently withheld recorded information, including books, documents, records,

and papers, relating to the property and financial affairs of a debtor, namely recorded information concerning the Clovis L. Prince, Katherine M. Robinson, and Tamika D. Prince Trust, from a custodian, trustee, marshal, or other officer of the Court and a United States Trustee who were entitled to possession of the recorded information.

o. In violation of 18 U.S.C. § 157(3), having devised and intending to devise a scheme and artifice to defraud and for the purpose of executing and concealing such scheme and artifice and attempting to do so, Debtor made false and fraudulent representations, claims, and promises when he fraudulently failed to disclose property transfers and falsely denied the existence of interests in real estate and trusts in his bankruptcy and in Case No. 09-43628, *In re Crown Project Management, Inc.*; and in Case No. 09-43645, *In re C. Prince & Associates Consulting, Inc.*

6. Section 522(q)(1)(A) of the Bankruptcy Code limits a debtor's homestead exemption limit where "the debtor has been convicted of a felony ... which under the circumstances, demonstrates that the filing of the case was an abuse of the provisions of this title." Here, the Guilty Verdict demonstrates that the filing of Debtor's bankruptcy was an abuse of the provisions of Title 11 of the Bankruptcy Code. Accordingly, in this case, § 522(q)(1)(A) of the Bankruptcy Code limits the amount of Debtor's homestead exemption for the Covington Court Property to $146,450.00.

7. American Bank has carried its burden to establish that Debtor is not entitled to an exemption for the "American Fund IRA" identified in Schedule C of Debtor's Bankruptcy Schedules. The objection to Debtor's exemption for the "American Fund IRA" is hereby sustained.

8. American Bank has carried its burden to establish that Debtor is not entitled to exemptions for the "Books," "Pictures," "Sports memorabilia," "Movies ("DVDs)," and "Music (Compact discs)" identified in Schedule C of Debtor's Bankruptcy Schedules. The objection to Debtor's exemptions for the "Books," "Pictures," "Sports memorabilia," "Movies ("DVDs)," and "Music (Compact discs)" identified in Schedule C of Debtor's Bankruptcy Schedules is hereby sustained.

9. American Bank has carried its burden to establish that Debtor is not entitled to an exemption for the "Clothing (including accessories and shoes)" identified in Schedule C of Debtor's Bankruptcy Schedules to the extent that any amount attributable to the clothing exceeding Debtor's claimed exemption inures to the benefit of the Bankruptcy Estate. The objection to Debtor's exemption for the Clothing (including accessories and shoes)" is hereby sustained to the extent that any amount attributable to the clothing exceeding Debtor's claimed exemption inures to the benefit of the Bankruptcy Estate

10. American Bank has carried its burden to establish that Debtor is not entitled to an exemption for the "2002 Lexus SC430," or any amounts attributable to it, identified in Schedule C of Debtor's Bankruptcy Schedules to the extent that any amount attributable to the Lexus exceeding Debtor's claimed exemption inures to the benefit of the Bankruptcy Estate. The objection to Debtor's exemption for the "2002 Lexus

SC430," including any amounts attributable to it, is hereby sustained to the extent that any amount attributable to the Lexus exceeding Debtor's claimed exemption inures to the benefit of the Bankruptcy Estate.

11. American Bank has carried its burden to establish that Debtor is not entitled to exemptions for the "Wedding rings" and "Watches" identified in Schedule C of Debtor's Bankruptcy Schedules. The objection to Debtor's exemptions for the "Wedding rings" and "Watches" is hereby sustained.

**IT IS THEREFORE ORDERED** that the Objections to Exemptions are hereby **SUSTAINED** as specified above.

**IT IS FURTHER ORDERED** that the Chapter 7 Trustee may immediately take all steps necessary to sell the Covington Court Property.

**IT IS FURTHER ORDERED** that Debtor and any and all parties with any interest in the Covington Court Property shall cooperate with the Chapter 7 Trustee's efforts to sell the Covington Court Property.

Signed on 7/25/2011

Brenda T. Rhoades SR

HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE